{¶ 1} Defendant-appellant, Taiesha Henderson, appeals her convictions for drug possession, drug trafficking, and possessing criminal tools. For the reasons that follow, we affirm.
 {¶ 2} Appellant and her co-defendant, Donte Jones, were indicted by a Cuyahoga County grand jury on the above three counts, alleged to have occurred on December 16, 2005, and found guilty after a joint jury trial. Appellant was sentenced to a four-year prison term.
 {¶ 3} At trial, Detectives Tommy Hall and Leland Edwards testified as to their investigation of drug-selling activity at 9105 Sauer Avenue in Cleveland. Specifically, in the weeks prior to December 16, 2005, the police received a tip that drugs were being sold from the residence. Based on that tip, Detective Hall began his investigation by searching county records, performing a gas utility check and "running" the address and names through the police department's computer. After learning that the gas bill was listed under the codefendant's name, the police conducted surveillance.
 {¶ 4} During their surveillance, the police observed that on several occasions, a person would knock on the door of the residence, and appellant would come out and talk with the person for a few seconds before returning inside the house. The visitor would remain outside. A few seconds later, appellant would come out of the house again and engage in a hand-to-hand exchange with the visitor, who would *Page 4 
then leave the area. Believing these interactions to be consistent with drug activity, the detectives secured a confidential informant to make controlled purchases from the house on December 8 and 13, 2005.
 {¶ 5} On December 8, 2005, the detectives observed the informant go to the door, appellant come out, and a transaction occur between the informant and appellant. Similarly, on December 13, 2005, the detectives used the same informant and saw him engage in a transaction with appellant. Detective Hall testified that he never saw the co-defendant during the surveillance and controlled buys.
 {¶ 6} After the surveillance and controlled buys, the police obtained a search warrant for the premises, which they executed on December 16, 2005. Prior to entering the house, the police again conducted surveillance, during which they saw an individual, later identified as Andre Minor, enter the house. Detective Hall testified that he had not seen Minor at the house before when he and his partner were conducting surveillance or watching the controlled buys. Approximately fifteen minutes after Minor went into the house, the SWAT unit knocked and announced themselves and the police entered. Detective Hall testified that upon entry, he immediately saw appellant, codefendant Jones and Minor. All three were advised of their rights and told that the police had a search warrant. Minor was subsequently released and appellant and Jones were arrested.
 {¶ 7} One of the law enforcement officials who participated in the search, Sergeant Darrell, discovered an off-center tile in the drop ceiling in the master *Page 5 
bedroom. The off-center tile was immediately apparent and suspicious to Darrell. Upon moving the off-center tile, the sergeant found a bag of crack cocaine just inside the ceiling and another bag with an equal-sized amount of crack cocaine a little further inside the ceiling.
 {¶ 8} Sergeant Darrell also found a pair of jeans in the bedroom, with $1,831 and the codefendant's identification in the pockets. The codefendant was not wearing pants when the police entered the house. After examination of the money by Detective Hall, it was discovered that $80 of the buy money used for the December 8 and 13 controlled buys was contained in the money found in the codefendant's pockets. Other clothing, both male and female, were found in the bedroom. The police also found a digital scale, spoon, crack pipe, sandwich baggies and two cell phones, one of which appellant claimed belonged to her. The police saw several photographs of appellant inside the house.
 {¶ 9} After testing, it was determined that the crack cocaine weighed a total of 49.22 grams (one bag weighed 26.14 grams and the other bag weighed 23.08 grams). The scale, spoon and crack pipe all tested positive for cocaine residue.
 {¶ 10} Detective Hall testified that in his experience in law enforcement, the amount of crack cocaine found in the house was indicative that the possessors were mid-level drug dealers. Hall further testified that, in his experience, 49.22 grams of crack cocaine could be packaged for sale for at least $4,000. *Page 6 
 {¶ 11} In her first and second assignments of error, appellant argues that the State failed to present sufficient evidence to support her convictions and that the convictions are against the manifest weight of the evidence, respectively.
 {¶ 12} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. Id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v.Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668. In the simplest sense, the difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion.Thompkins at 390 (Cook, J., concurring).
 {¶ 13} Sufficiency is a question of law. Id. at 386; Smith, supra at 113. If the State's evidence is found to have been insufficient as a matter of law, then on appeal, the court may reverse the trial court.Thompkins at paragraph three of the syllabus, citing Section 3(B)(3), Article IV, Ohio Constitution. Under this construct, the State would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury.Thompkins at 386; Smith at 113.
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind *Page 7 
of the defendant's guilt beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560. Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." Id. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 15} Manifest weight is a question of fact. Thompkins at 387. If the trial court's judgment is found to have been against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. Under this construct, the appellate court "sits as the `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." Id.
 {¶ 16} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." Thompkins at 387. "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring). An appellate court may not *Page 8 
merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. See, also, id. at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 17} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency when conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins at 388. In the present case, manifest weight is dispositive.
 {¶ 18} R.C. 2925.11(A) governs drug possession and provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.03(A)(2) governs drug trafficking and provides as follows:
 {¶ 19} "(A) No person shall knowingly do any of the following:
 {¶ 20} "* * *
 {¶ 21} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has *Page 9 
reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 22} R.C. 2923.24(A) governs possession of criminal tools and provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 23} Appellant argues that the State failed to prove that she "knowingly" possessed the crack cocaine that was found in the ceiling tile and that she "knowingly" prepared it for shipment, knowing or having reasonable cause to believe it was intended to be sold by herself and/or Jones. More specifically, appellant argues that the house belonged to Jones, and even if she had sold small amounts of crack cocaine on prior occasions, that does not prove she knew of the large amount of crack cocaine in the bedroom ceiling or that she possessed the criminal tools.
 {¶ 24} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B).
 {¶ 25} R.C. 2925.01(K) defines possession as "* * * having control over a thing or substance," but provides that possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." *Page 10 
 {¶ 26} Possession can be actual or constructive. State v. Brown, Cuyahoga App. No. 87932, 2007-Ohio-527. Actual possession entails ownership or physical control, whereas constructive possession exists when an individual knowingly exercises dominion and control over an object, even though the object may not be within his or her immediate physical possession. Id.; State v. Hankerson (1982), 70 Ohio St.2d 87,434 N.E.2d 1362. Knowledge and possession may be constructive in nature and may be proven entirely through circumstantial evidence. State v.Haynes (1971), 25 Ohio St.2d 264, 267 N.E.2d 787; State v. Trembly
(2000), 137 Ohio App.3d 134, 738 N.E.2d 93.
 {¶ 27} Prior to executing the search warrant on December 16, 2005, the police saw appellant selling drugs from the house on several occasions and, in fact, set up two controlled buys in which a confidential informant purchased crack cocaine from appellant. During that period of surveillance and the controlled buys, the police did not observe anyone except appellant selling drugs from the house. Further, while executing the search warrant, the police saw both male and female clothing in the bedroom where the crack cocaine was found, as well as photographs of appellant throughout the house. Moreover, $80 of the buy money used during the controlled buys when appellant sold crack cocaine from the house was found in Jones' pants pockets which were found in the bedroom.
 {¶ 28} The above evidence is sufficient to demonstrate that appellant knowingly possessed the crack cocaine, knowingly prepared it for shipment knowing *Page 11 
or having reasonable cause to believe it was intended to be sold by herself and/or Jones, and that she possessed the criminal tools.
 {¶ 29} Appellant further argues that she was prevented from cross-examining her "accuser," i.e., the confidential informant, who was not called by the State as a witness. The State, however, was not required to produce the informant. The informant was not appellant's "accuser," as the crimes for which she was being prosecuted were not the result of her interaction with the informant. Rather, appellant's interaction with the informant was merely the "background" used by the police to obtain and execute the search warrant.
 {¶ 30} Based on the above analysis, we do not find this to be "the exceptional case in which the evidence weighs heavily against the conviction." Therefore, appellants' first and second assignments of error are overruled.
 {¶ 31} In her third assignment of error, appellant contends that she was denied effective assistance of counsel. In particular, she challenges her attorney's failure to request a separate trial from Jones and failure to object to allegedly inadmissible hearsay.
 {¶ 32} In order to demonstrate a claim of ineffective assistance of counsel, appellant must show that her counsel deprived her of a fair trial. Specifically, appellant must show that: (1) defense counsel's performance at trial was seriously flawed and deficient; and (2) the result of the trial would have been different if defense counsel had provided proper representation at trial. Strickland v. *Page 12 Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 33} A presumption that a properly licensed attorney executes his duty in an ethical and competent manner must be applied to any evaluation of a claim of ineffective assistance of counsel. State v.Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299, 209 N.E.2d 164. In addition, this court must accord deference to defense counsel's strategic choices during trial and cannot examine the strategic choices of counsel through hindsight.Strickland, supra, at 689.
 {¶ 34} We first address appellant's claim of ineffective assistance of counsel based upon failure to request a separate trial. Appellant argues that, in being tried with Jones, she was precluded from calling him as a witness because of the Fifth Amendment privilege against self-incrimination. She also argues that she was prejudiced by being tried with Jones.
 {¶ 35} Crim. 8(B) governs joinder of defendants and provides as follows:
 {¶ 36} "(B) Joinder of defendants. Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count." *Page 13 
 {¶ 37} Similarly, R.C. 2945.13 provides that when two or more defendants have been jointly indicted for a felony, the defendants should be jointly tried unless, on application of one of the defendants, the court orders that they be tried separately. Crim.R. 14 permits the court to separately try defendants when it appears that a joint trial would prejudice either the State or a defendant.
 {¶ 38} Generally, it is a matter of discretion with the trial court as to whether it will grant a separate trial for codefendants. The defendant must show that a joint trial will prejudice his interests because the law favors joint trials. Such trials conserve judicial resources, diminish inconvenience to witnesses, and minimize the possibility of incongruous results in successive trials before different juries. State v. Thomas (1980), 61 Ohio St.2d 223, 400 N.E.2d 401.
 {¶ 39} In addressing a similar assertion by a defendant that a joint trial prevented the defendant from calling the codefendant to testify on his behalf, the Eleventh Appellate District stated:
 {¶ 40} "* * * An intention of the movant to have his codefendant testify has never been considered ground for severance. This is especially true where, as here, any prejudice resulting from the joint trial is merely speculative. [Defendant] has neither shown nor asserted that (1) Smith's version of the facts would have any exculpatory effect, or that (2) Smith would more likely testify were he tried separately. We do not conjecture abuses of discretion." State v. Perod (1968),15 Ohio App.2d 115, 120, 239 N.E.2d 100. *Page 14 
 {¶ 41} Appellant argues that she had a defense "antagonistic" to that of her co-defendant. Appellant, however, did not present a defense and, therefore, her mere assertion is an insufficient showing of prejudice. Further, as stated in Perod, supra, Jones could have invoked his right to remain silent even if he and appellant had been tried separately, and there is no indication that he would not have done so.
 {¶ 42} Therefore, appellant and Jones were properly tried together and appellant has failed to demonstrate prejudice by the joint trial. Defense counsel, consequently, did not breach an essential duty owed appellant by not requesting that appellant be tried separately from Jones. "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v. Shannon (June 16, 1982), Summit App. No. 10505.
 {¶ 43} Appellant's second ground for her ineffective assistance of counsel claim is that her counsel failed to object to testimony that was allegedly hearsay. In particular, appellant argues that testimony that there was a tip that the house was a drug house and that two people lived there was so prejudicial to her that counsel's failure to object was ineffective. We disagree.
 {¶ 44} In addressing this issue of whether anonymous tips received by the police about drug activity constitute inadmissible hearsay, this court held as follows:
 {¶ 45} "Evid.R. 801(C) defines hearsay as `a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.' Here, the state was not offering the anonymous tips to *Page 15 
prove the truth of the matter asserted, viz, that appellant was selling drugs. Instead, testimony regarding the anonymous tips was presented merely to establish Detective Cudo's reasons for investigating appellant's activities." State v Dakdouk (Mar. 1, 2001), Cuyahoga App. No. 77701.
 {¶ 46} Similarly, in this case, the anonymous tip was one of the reasons the police began their investigation of appellant. Therefore, the testimony was admissible and counsel's failure to object to it was not deficient.
 {¶ 47} Appellant's third assignment of error is overruled.
 {¶ 48} In her fourth assignment of error, appellant contends that she was denied her constitutional right to confrontation pursuant toCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354,158 L Ed.2d 177, when repeated references to out-of-court conduct observed by the confidential informant was used against her.
 {¶ 49} In Crawford, supra, the Supreme Court of the United States held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court.
 {¶ 50} Appellant's argument in this assignment of error is that the State's failure to disclose the identity of the confidential informant deprived her of her right to confront the informant under the Sixth Amendment and Crawford. We disagree. First, appellant does not challenge any statement allegedly made by the informant to *Page 16 
the police that was entered into evidence at trial. Second, appellant never requested the identity of the informant. The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges. State v. Williams (1983), 4 Ohio St.3d 74,446 N.E.2d 779, at the syllabus.
 {¶ 51} Appellant argues that if the informant had been available, "he would have been able to answer the questions of who had access to the drugs; was appellant being restricted access to the drugs-allowed to sell only small amounts [and] whether he saw anyone else in the house." This testimony that the informant could have offered is mere speculation on the part of appellant. Moreover, the confidential informant's knowledge would have been limited to the previous controlled buys he made from appellant.
 {¶ 52} Based upon the above analysis, appellant's rights underCrawford or the Confrontation Clause were not violated and her fourth assignment of error is overruled.
 {¶ 53} In her fifth and final assignment of error, appellant contends that the trial court erred by allowing the police to testify, in violation of Evid.R. 403(A), as to their opinion of whether she was a drug dealer. *Page 17 
 {¶ 54} Evid.R.403(A) provides that "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 55} Evid.R. 702 governs expert testimony and provides in relevant part as follows:
 {¶ 56} "A witness may testify as an expert if all of the following apply:
 {¶ 57} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 58} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 59} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *."
 {¶ 60} Appellant argues that testimony by Detective Edwards that appellant was involved in drug activity was prejudicial and non-expert opinion testimony. The particular testimony was as follows:
 {¶ 61} "Q. And explain what you saw on those occasions?
 {¶ 62} "A. On those occasions we did periodic surveillance meaning that, you know, we did maybe 20 minutes surveillance here, half an hour surveillance here. I did some on and off duty, going over there to that Sauer address and observe individuals, same activity of going to the house, meeting up with this female who *Page 18 
opens the door, hand to hand exchange, person leaves the area. Happens quickly. We on another date went back with the informant to make another controlled buy.
 {¶ 63} "Q. This activity of coming to the door quickly, does that have any significance to you?
 {¶ 64} "A. From my experience it is indicative of drug activity, very much so.
 {¶ 65} "Q. Okay, now you said other people, not the informant, would come up to the house and go in, not even go in, just knock on the door, quick hand to hand exchange and leave?
 {¶ 66} "A. Yes.
 {¶ 67} "Q. Would you clarify the activity that the informant did for you to be of the same type?
 {¶ 68} "A. Yes."
 {¶ 69} Upon review of this testimony, we do not find that it was improper. Detective Edwards testified that he was a 12-year veteran of the Cleveland police department, and that for six of those years he was involved in drug investigations. His testimony related to a matter beyond the knowledge or experience possessed by lay persons, and he was qualified as an expert by specialized experience and training. Further, his testimony was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
 {¶ 70} Appellant's fifth assignment of error is overruled.
 Judgment affirmed. *Page 19 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, JUDGE
 COLLEEN CONWAY COONEY, P.J., and KENNETH A. ROCCO, J., CONCUR *Page 1