JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Leon Walton ("appellant"), appeals his convictions *Page 3 
and sentences for rape, kidnapping, intimidation, and a repeat violent offender specification. For the reasons set forth below, we affirm his convictions for rape, kidnapping, and intimidation; vacate his repeat violent offender specification, vacate his sentences; vacate his sexual predator classification; and remand for proceedings consistent with this opinion.
 {¶ 2} On October 27, 2006, the Cuyahoga County Grand Jury indicted appellant on four counts: counts one and two alleged rape in violation of R.C. 2907.02(A)(2); count three alleged kidnapping in violation of R.C. 2905.01; and count four alleged intimidation in violation of R.C. 2921.04(B). Notice of prior conviction and repeat violent offender ("RVO") specifications were included with counts one, two and three. Appellant pled not guilty to all charges in the indictment.
 {¶ 3} The case proceeded to trial on January 30, 2007. After presentation of the evidence, the jury was unable to reach a conclusion, and the trial court declared a mistrial on February 2, 2007.
 {¶ 4} Five days later, the trial court scheduled the retrial for April 9, 2007 at the request of appellant. On February 22, 2007, the trial court rescheduled the trial for April 18, 2007. On March 23, 2007, appellant requested a transcript of the first trial at the state's expense. The trial court denied appellant's request.
 {¶ 5} Nevertheless, appellant moved for a continuance of the trial a day before the scheduled date, arguing he needed two weeks to obtain the transcript of the first trial. The following day, April 18, 2007, the trial court denied appellant's *Page 4 
request and began the retrial as scheduled.
 {¶ 6} After opening statements, the state presented its evidence, which established the following pertinent facts.
 {¶ 7} During the early morning hours of September 30, 2006, the victim, S.P., was bartending at the Wedge Inn. After closing, the victim exited the bar with appellant and walked to her vehicle. He asked her to accompany him to breakfast. After initially refusing, she agreed and followed him to the North Point Inn.
 {¶ 8} The victim was perplexed that appellant drove to a hotel as she believed the two were to have breakfast. Nevertheless, she followed him inside. She watched appellant rent a room. He assured her the two would eventually go somewhere to have breakfast but requested she accompany him to the room for a little while. Reluctantly, she followed him to the room. Inside, she smoked a cigarette while appellant smoked marijuana.
 {¶ 9} After a short while in the room, the victim realized appellant had no intention to go to breakfast, so she got up to leave. Appellant attempted to hug her and pulled her to the bed. He then attempted to kiss her and she resisted. In response, he punched her in the side of the head and pulled her hair. When she screamed, he told her to stop or he would kill her. He then continued to strike the victim.
 {¶ 10} The victim tried to defend herself by informing appellant that she was menstruating. He responded by dragging her to the bathroom by her hair. He *Page 5 
demanded she discard her tampon or he threatened to perform sodomy on her. Believing him, she complied. He then vaginally raped the victim in the bathroom.
 {¶ 11} Appellant then dragged the victim to the bed where he again vaginally raped her. When he stopped, she gained the courage to exit the room. As she was grabbing her clothes, appellant threatened that if she told anyone about the incident, he would kill her. He followed her out of the hotel. In the parking lot, appellant again threatened to kill the victim if she told anyone, including the police.
 {¶ 12} The victim left the hotel and traveled directly to her residence. Immediately upon arriving, she informed her adult daughter of the incident. Her daughter transported her to the hospital where she was treated, a rape kit was collected, and the victim reported the incident to the police.
 {¶ 13} The hospital treated the victim for numerous bruises and contusions to her head. Additionally, a rape examination was performed and semen was collected.
 {¶ 14} Officer Patrick J. Petranek of the Cleveland Police Department testified that he received a call during the early morning hours of September 30, 2006, that a female victim had been raped and was being treated at Lakewood Hospital. He arrived at the hospital shortly thereafter and conducted an interview of the victim. At the hospital, she informed the officer of the rape and the pertinent events of that evening. The victim was unsure of the name of the hotel or location. Thus, the police toured the downtown area with the victim and she was able to identify the *Page 6 
hotel where the alleged rape had occurred.
 {¶ 15} In response, the police entered the hotel and asked for the receipt for the room. The receipt contained appellant's signature and address. When the police went to the room, appellant was not inside. The victim verified that it was the room in which she was raped. Officer Petranek immediately notified the scientific investigative unit ("SIU") to come to the room and retrieve evidence.
 {¶ 16} Melissa Zielaskiewicz, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified that the semen retrieved from the victim on the night in question was consistent with belonging to the appellant. More specifically, she testified that, "[b]ased on the national database provided by the Federal Bureau of Investigation ("FBI"), the expected frequency of occurrence of the DNA profile identified on the sperm fraction of the rectal swab is one in one sextrillion, 373 quintillion unrelated individuals." She also testified that a hair retrieved from the middle of the bed at the hotel room at the North Point Inn was a positive DNA match for the victim.
 {¶ 17} Detective Keith Hunter testified that he compiled a photo array of six individuals and showed it to the victim. She affirmatively identified appellant as the person who raped her during the early morning hours of September 30, 2006.
 {¶ 18} At the conclusion of the state's evidence, appellant moved for acquittal pursuant to Crim. R. 29(A). The trial court denied appellant's request. Appellant then presented two witnesses for examination. *Page 7 
 {¶ 19} Lisa Kasemets, appellant's girlfriend, testified that appellant left their residence around 7:00 p.m. or 8:00 p.m. on September 29, 2006 and returned between 4:15 a.m. and 4:30 a.m. the following morning. On cross-examination, she testified that she and appellant routinely refer to each other has husband and wife. She also stated that she attended a boot camp while in prison.
 {¶ 20} The defense then read into evidence Charles Eff's prior testimony from the first trial of this matter. Eff testified that he worked at the front desk at the North Point Inn during the early morning hours of September 30, 2006. He testified that on that evening, appellant approached the desk seeking to rent a room. A female stood behind him. Eff informed appellant that the room would cost $65 to rent. Appellant responded that he did not have enough money and turned towards the female. Eff did not see the female provide appellant with money, but appellant returned to the window with the $65. Eff then provided appellant with the key, and the appellant and the female entered the elevator and went up to the room.
 {¶ 21} Later, Eff witnessed appellant and the female leave. He explained that the female left first and seemed angry. Appellant followed and turned in the key while the female stood by the door. The two then left together. At the summation of Eff's testimony, the defense rested its case.
 {¶ 22} On April 23, 2007, the jury found appellant not guilty of rape as charged in count one of the indictment, but guilty of rape as charged in count two, as well as kidnapping and intimidation as charged in counts three and four. Additionally, on that *Page 8 
date, the trial court scheduled the repeat violent offender, sexual predator, and sentencing hearings for May 23, 2007. Thereafter, appellant filed a motion for acquittal, which the trial court denied.
 {¶ 23} On May 23, 2007, the trial court rescheduled the repeat violent offender, sexual predator, and sentencing hearings for June 8, 2007. Due to defense counsel being ill, the hearings were rescheduled for June 11, 2007 at appellant's request. On that date, however, counsel remained ill. Nevertheless, the court refused to continue the matter and instead appointed other counsel to represent appellant one hour prior to the hearings.
 {¶ 24} With the newly appointed counsel representing appellant, the court proceeded to conducting a plea hearing in which appellant pled no contest to the repeat violent offender specification. The trial court found appellant guilty on the repeat violent offender specification, which rendered moot the notice of prior conviction specification.
 {¶ 25} Immediately thereafter, the trial court conducted a sexual predator hearing and ultimately classified appellant as a sexual predator.
 {¶ 26} Finally, the trial court held a sentencing hearing. After hearing arguments from both parties, the trial court sentenced appellant to a ten-year prison sentence on each of counts two and three and ordered those sentences be merged. The court then sentenced appellant to an additional ten years for the repeat violent offender specification and ordered that sentence to be served consecutively to the *Page 9 
ten-year sentence imposed for counts two and three. The court further sentenced appellant to three years for count four, also to be served consecutively to the sentence imposed for counts two and three. In total, appellant was sentenced to 23 years imprisonment.
 {¶ 27} Appellant now appeals and asserts 19 assignments of error for our review. Where appropriate, we will address his assignments of error out of order. Appellant's first assignment of error states:
 {¶ 28} "Defendant was denied due process of law and equal protection of the law when the court denied defendant's request for a transcript of his prior trial."
 {¶ 29} Appellant contends that the trial court erred when it refused his request for a transcript of his first trial. He maintains that the transcript was crucial to his defense in the second trial and that he intended to use it to impeach witnesses. We agree with the trial court and find appellant is not entitled to a transcript at the state's expense.
 {¶ 30} The law is clear that the state must provide an indigent defendant with a transcript of a prior proceeding when it is needed for an effective defense or appeal. State v. Arrington (1975),42 Ohio St.2d 114, 326 N.E.2d 667, at paragraph one of the syllabus.
 {¶ 31} In this instance, however, appellant is not entitled to a transcript at the state's expense because he has failed to establish his indigency for purposes of obtaining the transcript. See id. In his motion, appellant maintained that he had *Page 10 
exhausted all his financial resources in defending himself in the first trial. Without more than a mere self-serving statements that he was impoverished, we cannot find appellant indigent. The record does not contain an affidavit of indigency or entry declaring appellant to be indigent prior to the motion for a transcript. Additionally, only one month later at the trial of this matter, appellant requested the court continue the trial so that he could obtain a transcript at his expense. He explained he was able to secure finances by selling a privately held business. Thus, he is not entitled to a transcript at the state's expense because he was not indigent. Appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error states:
 {¶ 33} "Defendant was denied effective assistance of counsel when the court refused to grant a continuance to obtain portions of the prior trial transcript."
 {¶ 34} A trial court has broad discretion in deciding whether or not to grant a continuance of trial proceedings. State v. Unger (1981),67 Ohio St.2d 65, 423 N.E.2d 1078, syllabus. A reviewing court will not reverse the denial of a continuance absent an abuse of discretion. Id. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. The Supreme Court of Ohio has explained this standard as follows:
 {¶ 35} "An abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of *Page 11 
the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87, 482 N.E.2d 1248.
 {¶ 36} In Unger, supra, the Ohio Supreme Court set forth a balancing test to determine whether a motion for continuance should be granted. When evaluating a motion for continuance, a court should consider the length of delay; whether other continuances have been granted; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the moving party contributed to the circumstances which give rise to the request for a continuance; and any other relevant factors, depending on the unique facts of each case. Unger, supra.
 {¶ 37} In denying appellant's request for a two-week continuance to obtain the transcript of the first trial, the trial court reasoned appellant had some 40 business days to obtain the transcript prior to the scheduled trial of this matter. More specifically, on February 2, 2007, the trial court scheduled the second trial for April 9, 2007, some nine weeks later. The court then rescheduled the matter to April 18, 2007, affording appellant an additional nine days to obtain the trial transcript. In total, appellant had over ten weeks to obtain the transcript or to file a motion to *Page 12 
continue the trial to obtain the transcript. Appellant, however, failed to do either and instead filed a motion to continue a day before the trial was scheduled to begin. Additionally, the court noted it was not convinced that two weeks was ample time to obtain the transcript and that appellant failed to contact the court reporter to inquire into the length of time needed to prepare the transcript. Considering these circumstances, we find the trial court did not abuse its discretion in denying appellant's motion for continuance. Appellant's second assignment of error is without merit.
 {¶ 38} Appellant's third assignment of error states:
 {¶ 39} "Defendant was denied his Sixth Amendment right to choice of counsel."
 {¶ 40} Within this assignment of error, appellant complains that he was denied his right to counsel of choice as guaranteed by the Sixth Amendment when the trial court appointed him new counsel one hour prior to his plea, sentencing, and sexual predator hearings. We agree with appellant, albeit for different reasons. In the instant matter, we find that appellant was denied adequate assistance of counsel when the trial court appointed counsel one hour prior to the proceedings. In Powell v.Alabama (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, the United States Supreme Court provided that one of the fundamental rights guaranteed by the due process clause of the Fourteenth Amendment is the right of an accused to have the aid of counsel for his defense. Id. at paragraph four of the syllabus. The duty to provide counsel "is not discharged by an assignment at such a time or under such *Page 13 
circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Id. at 71.
 {¶ 41} "While the Constitution does not specify the period that must intervene between the required appointment of counsel and trial, the Supreme Court has recognized that `the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel.'"Hunt v. Mitchell (2001), 261 F.3d 575, 585, quoting Avery v.Alabama (1940), 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.E.2d 377.
 {¶ 42} Courts have previously determined that a trial court's decision to appoint counsel on the day of trial constitutes prejudicial error and effectively denies a defendant his constitutional right to assistance of counsel. Hunt, supra; State v. Johnson, Cuyahoga App. No. 80436, 2002-Ohio-7057. "The likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Hunt, supra quoting United States v. Cronic (1982),466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657.
 {¶ 43} In this instance, appellant's retained trial counsel failed to appear twice for these hearings due to illness. Rather than grant a continuance the second time, the trial court appointed appellant other counsel one hour prior to the proceedings. *Page 14 
Appointed counsel was not present during the initial trial of this matter and, other than one hour prior to the retrial proceedings, had not spoken with appellant regarding his case. Nevertheless, the trial court proceeded to conduct a plea hearing at which appellant pled "no contest" to the repeat violent offender specification, a sexual predator hearing, and a sentencing hearing. We find the appointment of appellant's counsel one hour prior to these critical proceedings "sufficiently egregious as to warrant a presumption of ineffectiveness."Hunt, supra at 585.
 {¶ 44} We also note that, although appointed counsel did not object and stated that he had acquainted himself with the case file, the trial court's appointment of counsel one hour prior to the RVO plea, sentencing, and sexual predator hearing is a per se violation of an appellant's right to assistance of counsel. Id. at 582. Accordingly, by definition, appellant was not required to preserve the error below. Id.
 {¶ 45} Appellant's third assignment of error is sustained. His repeat violent offender conviction, sexual predator classification, and sentences are vacated and the case is remanded for proceedings consistent with this opinion.
 {¶ 46} Because we vacated appellant's repeat violent offender conviction, his sexual predator classification, and his sentences, we find appellant's remaining assignments of error concerning these proceedings moot. App. R. 12(A)(1)(c). Accordingly, we decline to address the following assignments of error:
 {¶ 47} "VII. Defendant was denied due process of law when he was convicted *Page 15 
and sentenced under an unconstitutional repeat violent offender specification."
 {¶ 48} "VIII. Defendant was denied due process of law when the court amended the indictment without resubmission of the indictment to a grand jury."
 {¶ 49} "IX. Defendant was denied due process of the law when the court accepted a plea of no-contest without fully advising defendant of his rights."
 {¶ 50} "X. Defendant was unconstitutionally sentenced as a repeat violent offender by reason of ex post facto legislation which arose from the same transaction."
 {¶ 51} "XI. Defendant was denied his Sixth Amendment right to a jury trial when the determination as to whether defendant was a repeat violent offender was reserved for the court."
 {¶ 52} "XII. Defendant was denied due process of the law when he was convicted as a repeat violent offender specification without any evidence or sworn testimony."
 {¶ 53} "XIII. Defendant was unconstitutionally sentenced as a repeat violent offender under a statute and specification which constituted bill of attainder."
 {¶ 54} "XIV. Defendant was unconstitutionally subjected to multiple punishments in violation of the Ohio and Federal Constitution."
 {¶ 55} "XVI. Defendant was denied his Sixth and Fourteenth Amendment rights when he was sentenced based on judicial factfinding."
 {¶ 56} "XIX. Defendant was denied due process of law when he was declared *Page 16 
to a be a sexual predator."
 {¶ 57} We next address appellant's fourth assignment of error, which states:
 {¶ 58} "Defendant was denied a fair trial by reason of improper questioning of witnesses, introduction and improper opinions and incompetent evidence."
 {¶ 59} Initially, we note that appellant failed to object to a majority of the alleged improper questions or statements that he complains of in this assignment of error. Therefore, he has waived all but plain error where he failed to object. State v. Slagle (1992),65 Ohio St.3d 597, 604-605, 605 N.E.2d 916. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 Improper questions and answers {¶ 60} First, appellant argues that the prosecutor improperly asked leading questions of the victim, Valerie Sparow, the victim's daughter, and Detective Keith Hunter. We have reviewed the transcript and find this argument not well-taken.
 {¶ 61} Evid. R. 611(C) states:
 {¶ 62} "(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination.
 {¶ 63} "The exception `except as may be necessary to develop his testimony' is *Page 17 
quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." State v. Lewis (1982), 4 Ohio App.3d 275, 278, 448 N.E.2d 487;State v. Madden (1984), 15 Ohio App.3d 130, 133, 472 N.E.2d 1126;State v. Smith (1977), 59 Ohio App.2d 194, 203, 392 N.E.2d 1264.
 {¶ 64} After reviewing the transcript, we find the trial court did not abuse its discretion in permitting the leading questions to which appellant complains. The leading questions were limited and were generally preceded or followed by other questions which required the witness to provide additional information. This argument is without merit.
 {¶ 65} Next, appellant asserts the prosecutor elicited hearsay testimony from Detective Hunter. Evid. R. 801(C) defines hearsay as the following:
 {¶ 66} "Hearsay. `Hearsay' is a statement, other than one made by declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 67} Statements which explain an officer's conduct while investigating a crime and not admitted to prove the truth of the statement are not hearsay. See Evid. R. 801(C); State v. Blevins (1987),36 Ohio App.3d 147, 149, 521 N.E.2d 1105; State v. Thomas (1980),61 Ohio St.2d 223, 232, 400 N.E.2d 401. The probative value of such statements must outweigh any unfair prejudice. Id.; see Evid. R. 403. *Page 18 
 {¶ 68} Appellant argues that the trial court erred when it admitted the testimony of Detective Hunter relating to various aspects of his investigation, such as when he received the assignment, the victim's photo identification of appellant, the condition of the crime scene, his interview with the victim, and the description of DNA and CODIS. Such information was not offered to prove the truth of the statements, but was offered to explain the detective's investigation during this case. Accordingly, his statements do not constitute hearsay and are admissible.
 {¶ 69} Next, appellant complains that Dr. Nelson, the emergency room doctor that treated the victim, improperly read the chief complaint, findings during physical examination, and diagnosis sections of the medical report which contained hearsay testimony of the victim.
 {¶ 70} Evid. R. 803 states in pertinent part:
 {¶ 71} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 72} "* * * (4) Statements for purposes of medical diagnosis or treatment."
 {¶ 73} "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 74} The statements made by Dr. Nelson in this case were clearly offered for purposes of medical diagnosis and treatment and described the "general character *Page 19 
of the cause * * * as reasonably pertinent to diagnosis or treatment." Hence, the statements were an exception to the hearsay rule and admissible.
 Testimony based on belief {¶ 75} Appellant complains that a few questions asked for the victim's and Dr. Nelson's belief. In this argument, appellant is challenging the use of the phrase "I believe," but the use in the proper context shows the witnesses were not providing speculative testimony. This argument is not well-taken.
 Irrelevant questioning {¶ 76} Appellant also maintains that the testimony of Melissa Zielaskiewicz, scientific examiner for BCI, and Detective Hunter concerning DNA and its entry into the CODIS database was irrelevant. As previously stated, because defense counsel failed to object to this testimony, we review for plain error. Slagle, supra. Without addressing the issue of relevancy, we note that any alleged error in admittance of such evidence was harmless. The result of the trial would not have been different had this testimony not been introduced. Accordingly, appellant's contentions in this regard are without merit.
 {¶ 77} Additionally, appellant argues that the trial court permitted Officer Patrick Petranek to testify as to the credibility of the victim. The law is clear that an officer should not opine as to the veracity of a witness's statement. See State v. Potter, Cuyahoga App. No. 81037, 2003-Ohio-1338 (officer's testimony that defendant's version of events was untruthful was improper); see, also, State v. *Page 20 Boston (1989), 46 Ohio St.3d 108, 129, 545 N.E.2d 1220 (an expert may not express opinion of a child declarant's veracity). In this case, however, a review of the transcript reveals that Officer Petranek did not testify that he believed the victim's allegations, only that her behavior was consistent with that of a rape victim. Accordingly, appellant's argument in this regard is not supported by the record.
 Improper cross-examination {¶ 78} Finally, appellant contends the trial court erred in permitting the prosecutor to question the defense's witness, Lisa Kasemets, regarding boot camp; the appellant's referral to her as his wife, even though the two were not legally married; her personal investigation of the Wedge Inn; and the inconsistencies in her prior testimony. He argued that these questions insinuated answers and assumed the existence of facts which were never established on the record. We find appellant's argument in this regard without merit.
 {¶ 79} First we note that the defense opened the door during direct examination into the inquiry into Ms. Kasemets' attendance at boot camp. The state, therefore, was permitted to inquire further into the subject to clarify that the boot camp she attended was not a military camp but rather was for a drug conviction.
 {¶ 80} Next, it was completely within the prosecutor's purview to question the witness regarding the appellant's referral to her as his wife, her personal investigation of the Wedge Inn, and her inconsistencies in her prior testimony in order to impeach the witness and discredit appellant. Appellant's argument in this *Page 21 
regard is not well-taken. Accordingly, we overrule appellant's fourth assignment of error as we have determined each assertion presented is without merit.
 {¶ 81} Appellant's fifth assignment of error states:
 {¶ 82} "Defendant was denied due process of law when the court failed, sua sponte, to control improper questioning of jurors during voir dire."
 {¶ 83} Here, appellant argues the prosecutor posed numerous hypothetical questions to the jurors during voir dire that provided specifics on the factual issues and attempted to illicit from the jury how it would react to those issues. First, we note that by failing to object to these alleged improper questions or statements, appellant has waived all but plain error. State v. Slagle, supra. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland, supra.
 {¶ 84} In State v. Saxton, Lorain App. Nos. 02CA008029, 02CA008030, 2003-Ohio-3158, the court rejected similar arguments made by appellant in that case. In so doing, the court stated:
 {¶ 85} "`The purpose of the examination of a prospective juror upon his voir dire is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant.' Vega v. Evans (1934), 128 Ohio St. 535,191 N.E. 757, 40 Ohio L.Rep. 650, paragraph one of the syllabus. See, also,Dowd-Feder, Inc. v. Truesdell (1936), 130 Ohio St. 530, 200 N.E. 762, paragraph one of the syllabus. In order to ensure that result, counsel is afforded *Page 22 
reasonable latitude on the voir dire examination. Krupp v. Poor (1970),24 Ohio St.2d 123, 125, 265 N.E.2d 268.
 {¶ 86} "`The scope of the inquiry will not be confined strictly to the subjects which constitute grounds for the sustaining of a challenge for cause; but if it extends beyond such subjects it must be conducted in good faith with the object of obtaining a fair and impartial jury and must not go so far beyond the parties and the issues directly involved that it is likely to create a bias, a prejudice, or an unfair attitude toward any litigant.' Vega v. Evans, supra, at paragraph two of the syllabus.
 {¶ 87} "`It is neither wise nor desirable for this court to prescribe the specific form such interrogatories are to take, or the manner of their presentation. That is a matter wholly for the trial court to determine in the exercise of its sound discretion and in the light of all the facts and surrounding circumstances.' Dowd-Feder, Inc. v.Truesdell (1936), 130 Ohio St. at 535.
 {¶ 88} "`Much rests in the discretion of the court as to what questions may or may not be answered, but in practice very great latitude is, and generally ought to be indulged.' Id. at 533. The scope of the examination during voir dire is within the sound discretion of the trial court and the judgment will not be reversed absent a showing that the trial court abused its discretion. State v. Jenkins (1984),15 Ohio St.3d 164, 186, 473 N.E.2d 264. `"Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' State v.Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. *Page 23 
When exercising discretion, the trial court should allow reasonable inquiry on any relevant matter which is determinative of the issues of the case. Dayton v. Meyer (Mar. 29, 1991), 2d Dist. No. 11848. A juror may be removed for cause if the juror's answers given in voir dire reveal that the juror cannot be fair and impartial, or will not follow the law as given by the court. R.C. 2313.42(J); State v. Cornwell,86 Ohio St.3d 560, 563, 1999-Ohio-125, 715 N.E.2d 1144."
 {¶ 89} Saxton, supra.
 {¶ 90} In this assignment of error, appellant complains that the prosecutor posed hypothetical questions to the jurors which provided specific facts similar to those in the case and attempted to illicit how they would respond to those facts. The questions posited by the prosecution were probes into the jurors' thinking and were employed to determine whether the juror would be biased or, instead, would vote pursuant to the law. See id. According to R.C. 2313.42(J), such inquiries may provide a basis for the discharge of a juror. Id. Accordingly, the trial court did not abuse its discretion in permitting the questions. Appellant's fifth assignment of error is without merit.
 {¶ 91} Appellant's sixth assignment of error states:
 {¶ 92} "Defendant was denied due process of law and denied his right not to be placed twice in jeopardy when the jury returned inconsistent verdicts on identical rape counts." *Page 24 
 {¶ 93} Appellant argues that, because the jury acquitted him of rape as charged in count one but found him guilty of rape as charged in count two, it returned inconsistent verdicts. We find this argument without merit.
 {¶ 94} In Browning v. State (1929), 120 Ohio St. 62, 165 N.E. 566, the Supreme Court of Ohio considered the issue of inconsistent verdicts, and set forth the following rule:
 {¶ 95} "`A verdict will not be set aside as inconsistent, or uncertain, because it finds differently as to counts in which there is no material difference.' * * * [E]ach count of an indictment charges a complete offense; that the separate counts of an indictment are not interdependent, but are, and necessarily must be, each complete in itself, and that in determining the effect of a verdict that responds by designation to a given count the other counts of the indictment will be ignored, and the response of the jury to such other counts likewise ignored; that an inconsistency does not arise, unless it arises out of inconsistent responses to the same count."
 {¶ 96} In this case, appellant was charged with two counts of rape. The victim alleged that appellant raped her once in the bathroom and once on the bed, two separate and distinct instances. It is entirely possible for the jury to find appellant guilty of the rape on the bed and not the rape in the bathroom. Such a finding does not render the verdicts inconsistent with each other. Therefore, appellant's sixth assignment of error is overruled.
 {¶ 97} Appellant's fifteenth assignment of error states: *Page 25 
 {¶ 98} "Defendant was denied his rights under the Fifth Amendment by being required to submit to a polygraph."
 {¶ 99} Appellant argues that the trial court improperly considered his refusal to submit to a polygraph test when rendering his severe sentence. We find appellant's argument not well-taken.
 {¶ 100} A review of the transcript reveals that on April 23, 2007 and May 23, 2007 the trial court ordered appellant to submit to a polygraph test. Appellant, however, refused to comply with the court's order on both occasions. On June 11, 2007, however, the court expressly stated:
 {¶ 101} "The Court ordered not only a polygraph examination, which we don't have — and the Court is not going to consider the fact that Mr. Walton didn't take his polygraph for any purpose whatsoever. We will just ignore the request for the polygraph." Accordingly, we find appellant's argument in this regard without merit.
 {¶ 102} Nevertheless, even if we accepted appellant's argument, it would be rendered moot as a result of our vacating appellant's sentences in appellant's third assignment of error. Appellant's fifteenth assignment of error is overruled.
 {¶ 103} Appellant's seventeenth assignment of error states:
 {¶ 104} "Defendant was denied due process of law when the court overruled his motion for judgment on acquittal." *Page 26 
 {¶ 105} Motions for judgments of acquittal are governed by Crim. R. 29(A), which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 106} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394.
 {¶ 107} Viewing the evidence in a light most favorable to the state, we find that the state presented sufficient evidence that appellant committed rape, kidnapping, and intimidation.
 {¶ 108} The jury convicted appellant of rape in violation of R.C. 2907.02(A)(2). This statute provides in relevant part: *Page 27 
 {¶ 109} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 110} The victim testified that she followed appellant to the hotel room believing the two would soon be getting some breakfast. She testified that she did not have any intention of engaging in any sexual conduct with appellant on that night and informed him of such. Nevertheless, appellant struck her repeatedly and forced her onto the bed and vaginally penetrated her against her will. She testified that she repeatedly said no. Shortly thereafter, the victim returned home and informed her daughter that she had been raped. Her daughter testified that the victim appeared distraught and beaten.
 {¶ 111} Within minutes, the two were at the hospital and the doctor noted the victim's severe injuries and performed a rape exam where semen was collected. DNA tests later revealed that the semen belonged to appellant. Considering the foregoing, the jury reasonably determined that there was sufficient evidence establishing appellant raped the victim.
 {¶ 112} Despite appellant's contentions to the contrary, although the jury acquitted appellant on one count of rape, it does not necessarily mean they must acquit appellant of the other count. The jury could have easily found appellant guilty of raping the victim on the bed but not in the bathroom. Accordingly, appellant's argument in this regard is without merit. *Page 28 
 {¶ 113} Appellant was also convicted of kidnapping. R.C. 2905.01
defines kidnapping in pertinent part as the following:
 {¶ 114} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 115} "* * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will; * * *"
 {¶ 116} The evidence presented established that although appellant voluntarily entered the room, she did so under the deception that the two would shortly be going for breakfast. When she determined that appellant had no intention of taking her to breakfast, she attempted to leave the hotel room. Appellant did not want to her leave. Instead, he hugged her, pulled her to the bed and attempted to kiss her. When she refused and attempted to leave, he punched her and continued to beat her. He then vaginally penetrated the victim against her will.
 {¶ 117} Again, the hospital records confirmed that the victim had a number of bruises and contusions to her face and head and that semen, later identified as belonging to appellant, was discovered during a rape examination. In light of the foregoing, we find sufficient evidence establishing appellant restrained the victim by force in order to engage in sexual activity against the victim's will. *Page 29 
 {¶ 118} Finally, appellant was convicted of intimidation in violation of R.C. 2921.04(B), which states:
 {¶ 119} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 120} In this case, the victim testified that when she left the hotel room and was in her car in the parking lot, the victim threatened to kill her if she informed the police of the incident. Accordingly, viewing the evidence in a light most favorable to the state, we find a rational trier of fact could have found the elements of the crime of intimidation proven beyond a reasonable doubt.
 {¶ 121} Having determined sufficient evidence existed establishing appellant committed a rape, kidnapping, and intimidation, we find his seventeenth assignment of error without merit.
 {¶ 122} Appellant's eighteenth assignment of error states:
 {¶ 123} "Defendant was denied effective assistance of counsel."
 {¶ 124} In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Bradley (1989), *Page 30 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Strickland, supra at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, supra at paragraph two of the syllabus; see, also,Strickland, supra at 687.
 {¶ 125} A defendant has the burden of proving ineffective assistance of counsel and there is a strong presumption that a properly licensed trial counsel rendered adequate assistance. State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128. As the Strickland Court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, supra at 689; see, also, State v.Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476.
 {¶ 126} First, appellant complains counsel was ineffective for failing to object to the improper hypothetical questions during the course of voir dire that appellant complained of in his fifth assignment of error. As we have previously determined that these questions are not improper, we find appellant's ineffective assistance claim without merit. "Failure to do a futile act cannot be the basis for *Page 31 
claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v. Henderson, Cuyahoga App. No. 88185,2007-Ohio-2372.
 {¶ 127} Second, appellant complains that counsel was ineffective for failing to object when the prosecutor asked leading questions. "[T]rial tactics that are debatable generally do not constitute a deprivation of effective counsel." State v. Edwards (Feb. 17, 1998), Clermont App. No. CA97-04-035. "Appellant's counsel's decision not to object can be considered a trial tactic." Id. at 16. Additionally, in appellant's fourth assignment of error, we determined the trial court did not abuse its discretion in allowing the leading questions. Again, failure to do a futile act cannot provide grounds for a claim of ineffective assistance.Henderson, supra.
 {¶ 128} Third, appellant maintains that counsel was ineffective for inquiring into Kasemets' stay at "boot camp." He argues that this question led to an extensive cross-examination by the prosecution that boot camp was not a military camp, but rather the result of incarceration at a prison for a drug conviction. We find appellant's argument flawed. At the first trial of this matter, Kasemets' prior felony drug conviction was introduced. It was inevitable such evidence would be introduced at the trial of this matter. Accordingly, because such evidence would have been inevitably presented, we fail to see defense counsel's error in inquiring into the boot camp aspect of her incarceration rather than the conviction itself. Fourth, appellant argues that counsel failed to object to the jury instruction that one witness's testimony would be sufficient to convict. In State v.Cunningham, *Page 32 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, the defendant complained of the same instruction. In finding no error in the instruction, the Supreme Court of Ohio reasoned:
 {¶ 129} "There was no error, plain or otherwise, in the trial court's credibility instruction. Crim. R. 30(B) permits the trial court to give the jury instructions of law relating to credibility and weight of the evidence. A single jury instruction may not be judged in artificial isolation but must be viewed in the context of the overall charge.State v. Price (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus. When the credibility instruction is viewed in its entirety, it is clear that the trial court did not instruct the jury to disregard discrepancies in the evidence. Rather, the court charged the jury to consider discrepancies and weigh their significance when determining credibility." Id. at 208.
 {¶ 130} Accordingly, as there was no error in the jury instruction, counsel was not ineffective for failing to object to its inclusion.Henderson, supra.
 {¶ 131} Fifth, appellant asserts counsel was ineffective for abandoning him at the sentencing hearing. This contention is unsupported by the record. The transcript reveals that he was not abandoned. Rather, his counsel was ill from food poisoning, and had informed the court of his illness. Hence, appellant's argument in this regard is without merit.
 {¶ 132} Sixth, appellant maintains counsel failed to object to Officer Petranek's testimony that the victim's behavior was consistent with rape victims and *Page 33 
the state's closing argument reiterating this testimony. As we previously determined that testimony was admissible, counsel had no obligation to object. See Henderson, supra. Furthermore, trial counsel is afforded great latitude in closing arguments. State v. Twyford,94 Ohio St.3d 340, 356, 2002-Ohio-894, 763 N.E.2d 122, relying on State v.Smith, 80 Ohio St.3d 89, 111, 1997-Ohio-355, 684 N.E.2d 668; State v.Loza (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082. "[I]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Twyford, supra. Accordingly, appellant's arguments are not well-taken.
 {¶ 133} Seventh, appellant argues that counsel failed to object to improper questions as argued in his fourth assignment of error. Again, having previously determined no error in these arguments, we do not find counsel ineffective for failing to object. See Henderson, supra.
 {¶ 134} Finally, appellant asserts that counsel failed to object to the amendment of the repeat violent offender specification in the indictment. We vacated his conviction in this regard in his third assignment of error. Accordingly, we find his argument moot and decline to address it pursuant to App. R. 12(A)(1)(c).
 {¶ 135} Having determined each of appellant's arguments regarding ineffective assistance of counsel without merit, we overrule his eighteenth assignment of error. *Page 34 
 {¶ 136} Convictions affirmed. Sentences, RVO specification and sexual predator classification vacated and remanded for further proceedings consistent with this opinion.
 It is ordered that appellee and appellant split the costs herein taxed. The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.
 A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, JUDGE
FRANK D. CELEBREZZE, JR., J., CONCURS COLLEEN CONWAY COONEY, P.J., DISSENTS (SEE ATTACHED DISSENTING OPINION)