[Cite as *State v. Ellison*, 2024-Ohio-1377.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-5 |
| v. | : | (C.P.C. No. 19CR-2544) |
| Kailan Ellison, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 11, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Darren M. Burgess*, for appellee. **Argued:** *Darren M. Burgess*.

**On brief:** *Carpenter Lipps, LLP*, and *Kort Gatterdam*, for appellant. **Argued:** *Kort Gatterdam*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant, Kailan Ellison, appeals the judgment of the Franklin County Court of Common Pleas, convicting him of one count of aggravated murder with a firearm specification, and sentencing him to a term of life imprisonment with parole eligibility after 30 years, consecutive to a three-year sentence on the firearm specification. For the following reasons, we reverse the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On May 23, 2019, a Franklin County Grand Jury indicted Ellison on one count of aggravated robbery, one count of aggravated murder, two counts of murder, and one count of tampering with evidence. The aggravated robbery, aggravated murder, and murder counts each contained a three-year firearm specification. All the charges stemmed from the November 19, 2017 shooting death of Martrise Maddox-Suddith. Ellison initially pled not guilty to all the charges.

{¶ 3} After Ellison's initial trial counsel withdrew due to a conflict of interest, the trial court appointed attorney Regina A. Griffith to represent him.

{¶ 4} Griffith brokered an agreement with the prosecution by which Ellison would aid the prosecution in its case against Ellison's codefendant, William Knox, and would testify truthfully against Knox. In exchange, the state agreed to resolve Ellison's case with Ellison pleading guilty to one count of murder with a firearm specification and counsel jointly recommending a prison sentence of 18 years to life. As part of the plea agreement, the state would request the trial court to nolle the remaining counts and specifications in the indictment. Ellison, Griffith, and the assistant prosecuting attorneys assigned to the case signed a plea agreement to that effect, which was dated August 19, 2021. (Aug. 19, 2021 Def.'s Agreement at 0A522-T23.)

{¶ 5} On August 19, 2021, prior to a change-of-plea hearing held that day, Ellison signed a "Defendant's Agreement," in which he agreed to testify truthfully concerning Maddox-Suddith's murder in any proceeding in which he was called as a witness. He agreed that his proffer, taken the same day, would be admissible in the state's case against him if he did not abide by the terms and conditions of the agreement. The agreement stated, in part:

> If it is determined by the Franklin County Prosecutor's Office that at any time the Defendant fails to cooperate fully, refuses to testify, * * * or otherwise violates any terms of this agreement, then the Franklin County Prosecutor's Office may reinstate the original charges against the Defendant as well as any additional charges which may be appropriate. The parties will be returned to their respective positions prior to the execution of this agreement with the expressed exception [that Ellison's proffer will be admissible in a criminal trial in the state's case-in-chief against Ellison].

(Def.'s Agreement at 0A522-T24, 6-7.) The prosecutor requested during the change-of-plea hearing that the Defendant's Agreement be incorporated into the plea agreement by reference. The trial court accepted Ellison's guilty plea to one count of murder with a firearm specification, nolled the remaining counts and specifications in the indictment, and continued the matter for sentencing until after Knox's trial. (Aug. 19, 2021 Tr. at 22-23.) During his plea colloquy with the court, Ellison indicated that he was satisfied with Griffith's representation. *Id.* at 12.

{¶ 6}   With Griffith's permission, prosecutors visited Ellison in jail on October 29, 2021, as part of their preparation for Knox's trial.  Griffith was not present for that meeting, during which prosecutors played for Ellison his previously recorded proffer, reviewed photographs, and talked "about usual witness prep stuff." (Nov. 4, 2021 Tr. at 4.)  Ellison did not indicate to the prosecutors that he was having second thoughts about testifying against Knox.

{¶ 7}   The state proceeded to trial against Knox as scheduled on November 1, 2021, before the same judge who was presiding over Ellison's case.  On November 4, 2021—the day Ellison was scheduled to testify against Knox—prosecutors received a message that Ellison was refusing to be brought to court.  *Id.* at 5.  The events that then transpired are detailed in the transcript of a hearing held in Ellison's case that afternoon.  Assistant Prosecuting Attorney David Zeyen explained:

> Today it was [Ellison's] turn to come in and testify about everything that happened. And we were -- my co-counsel received a message stating that the deputies had relayed to the bailiff that [Ellison] wasn't willing to come over; that he was not going to testify.
>
> So when we got here we -- we attempted to contact Regina Griffith all morning.  We were not able to get ahold of her.  No one was.  But being still a witness, we went down -- [Assistant Prosecuting Attorney Steven] Schott and I went down and just asked what was going on.  He informed us that he was no longer going to testify.
>
> We informed him about the possible consequences of not testifying.  He said that's fine.  He understood.
>
> Thereafter, we kept trying to get ahold of Ms. Griffith with no luck.  But at this point we felt the defendant -- the witness, Mr. Ellison, was going from being a witness to possibly being a defendant involving some of his substantial rights.  So the court very graciously -- and we appreciate Mr. Krapenc, who happened to be in the court today, another private attorney, was willing to go down and speak with him and -- as his attorney to find out what was going on, to give him advice, et cetera.
>
> It's my understanding, having talked to Mr. Krapenc afterwards, that Mr. Ellison was still of the mind he was not going to testify and that he understood the consequences of that being that his plea would be undone and that the statement he made to the State in front of Regina Griffith, that

recorded statement that he listened to on Friday where he confesses to his role in an aggravated murder, would be used against him at a trial.

This was, obviously, a blow to our case against Mr. Knox, requiring a negotiated settlement in that case, so -- which we just did about an hour ago. We had to discharge the jury and plead that case to a robbery without a gun, a 5-year sentence.

So here we are, Judge. Myself, Mr. Schott is present, Mr. Krapenc is here. Ms. Griffith did finally start contacting people around noon. She said she's having car trouble, and she's still not here.

*Id.* at 5-7. The state thereafter moved the trial court to set aside Ellison's plea.

{¶ 8} Krapenc then explained:

[A]t the Court's request, I appeared because Ms. Griffith couldn't be here. The prosecutors gave me a summary of the facts of the case, a -- they indicated to me that he had entered into a proffer which had been * * * [a]udiotaped * * *. And that he had also entered into a defendant's agreement whereby if he failed to cooperate that [the] audiotaped statement would be used against him in his case in chief, and he would be -- the deal of 18-to-life, based on his plea, would be withdrawn, and he would proceed to trial.

I met with Mr. Ellison on the third floor here shortly after that. I explained to him that although I had not seen or heard the proffer, that I understood the content of it; certainly it was damaging; and that it would, in fact, be used against him should he decide to not testify and not cooperate in accordance with his defendant's agreement.

I explained procedurally what would happen if he decided he did not want to testify. And he absolutely understood everything that we talked about. He asked me several questions that indicated to me he was very aware of the possible consequences here.

*Id.* at 7-8. Krapenc stated, "I made sure that he understood that -- that the case against him would include evidence, of course, that somebody had been murdered, the death was caused by gunshots, this was something that was easily proven, and his statement was also going to be introduced." *Id.* at 9. He continued, "after I cautioned him and advised him, he indicated to me this was the path he wished to take. He wished to not testify. And he understands that the State now wishes to take [the plea] deal off the table." *Id.* at 10.

{¶ 9} The trial court directly addressed Ellison about his refusal to testify, to ensure that he had been advised that his refusal could constitute a breach of his agreement with the state, could result in the setting aside of his guilty plea, and that the state would be able to use his proffer against him. Ellison stated he understood. He indicated he had been advised that, if convicted of all the charges against him, he would face a minimum sentence of 26 years to life and a maximum sentence of life without the possibility of parole. *Id.* at 10-12. The court found that Ellison "has been adequately warned as to the consequences that his refusal to testify would bring and that then [he] knowingly, voluntarily, and intelligently decided not to testify and thus breached his defense agreement." (Nov. 4, 2021 Tr. at 12.) The court then granted the state's motion to set aside Ellison's guilty plea.

{¶ 10} Griffith withdrew from representing Ellison later that month, after Ellison expressed his wish to contest the validity of his proffer, and the trial court appointed attorney Thomas Hayes as Ellison's new attorney.[1]

{¶ 11} On October 24, 2022, Ellison again entered a guilty plea, this time to *aggravated* murder with a three-year firearm specification and without a joint recommendation as to sentence. (Tr. at 3; Oct. 24, 2022 Entry of Guilty Plea.) The state agreed to nolle the remaining charges and specifications. The state requested that the trial court impose the maximum sentence of life without the possibility of parole. Following a presentence investigation, the trial court sentenced Ellison to life imprisonment with parole eligibility after 30 years, consecutive to a three-year sentence on the firearm specification.

{¶ 12} Ellison appeals his conviction and raises three assignments of error:

> [1.] APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION[S] 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

> [2.] THE TRIAL COURT ERRED IN FORCING APPELLANT TO ACCEPT NEW COUNSEL IN VIOLATION OF APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL.

---

[1] The court acknowledged that, in appointing Krapenc to represent Ellison on August 19, 2021, it had "inadvertently knocked [Griffith] off as counsel." (Nov. 22, 2021 Tr. at 3.) The court therefore issued an order withdrawing Krapenc and reinstating Griffith as Ellison's counsel. (Nov. 23, 2021 Entry.) It then issued an order withdrawing Griffith and appointing Hayes. (Nov. 24, 2021 Entry.)

[3.] THE TRIAL COURT ERRED IN REINSTATING CHARGES AGAINST APPELLANT AFTER ENTERING A NOLLE PROSEQUI.

## II. ANALYSIS

### A. Assignments of Error Nos. One and Two: Ineffective Assistance of Counsel

{¶ 13} Ellison maintains under both his first and second assignments of error that the trial court denied his constitutional right to the effective assistance of counsel.

#### 1. The Sixth Amendment right to counsel

{¶ 14} The Sixth Amendment to the United States Constitution states, in pertinent part, "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defense." Article I, Section 10 of the Ohio Constitution similarly provides that, "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Although Ellison cites the Ohio Constitution in his first assignment of error, he does not argue that it provides broader protections than does the Sixth Amendment to the United States Constitution. We therefore focus our analysis on the Sixth Amendment and the body of case law applying it.

{¶ 15} The Sixth Amendment right to counsel "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson v. Zerbst*, 304 U.S. 458, 462-63 (1938). According to the United States Supreme Court, " '[o]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.' " *United States v. Cronic* 466 U.S. 648, 654 (1984), quoting Schaefer, *Federalism and State Criminal Procedure*, 70 Harv.L.Rev. 1, 8 (1956). The right to counsel is therefore necessary "to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984).

{¶ 16} The Sixth Amendment envisions counsel "playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685. The language of the amendment itself refers not to the mere provision of counsel but to counsel's "[a]ssistance" for an accused's defense. It requires that an accused have counsel who acts as an advocate, *Anders v. California*, 386 U.S. 738, 743 (1967), and "who plays the role necessary to ensure

that the trial is fair," *Strickland* at 685.  Thus, " 'the right to counsel is the right to the *effective assistance* of counsel.' " (Emphasis added.)  *Id*. at 686, quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970) fn. 14.

{¶ 17} Once the right to counsel attaches—by the initiation of a criminal prosecution—the defendant is entitled to the presence of counsel and adequate representation during any "critical stage" of the proceedings.  *Rothgery v. Gillespie Cty., Texas*, 554 U.S. 191, 212 (2008).  The Supreme Court of Ohio has stated:

> The cases have defined critical stages as proceedings between an individual and agents of the State (whether 'formal or informal, in court or out,' see *United States v. Wade*, 388 U.S. 218, 226, * * *) that amount to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or * * * meeting his adversary,' *United States v. Ash*, 413 U.S. 300, 312-313 * * * (1973)[.]

*Id*. at fn. 16.  A "critical stage" is one that holds "significant consequences for the accused," *Bell v. Cone*, 535 U.S. 685, 696 (2002), such as one in which "[a]vailable defenses may be * * * irretrievably lost," *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961). These include arraignments, post indictment interrogations, post indictment lineups, the plea-bargaining process, and the entry of a guilty plea.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2011); *Missouri v. Frye*, 566 U.S. 134, 140 (2011).

### 2. The *Strickland* standard

{¶ 18} The Supreme Court has adopted the two-component standard set out in *Strickland* as the general test for analyzing a claim of ineffective assistance of counsel.  *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989).  In *Strickland*, the Supreme Court considered the standards by which to judge a claim of "actual ineffective assistance of counsel," 466 U.S. at 684, i.e., a claim that counsel deprived the defendant of the right to effective assistance of counsel, "simply by failing to render 'adequate legal assistance,' " *id*. at 686, quoting *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980).

{¶ 19} Under the *Strickland* test, the defendant must first establish that counsel's performance was deficient, because it "fell below an objective standard of reasonableness." *Id*. at 688.  An appellate court must judge the reasonableness of the attorney's conduct on the facts of the case, viewed as of the time of the conduct, while "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  The second component of the *Strickland* test requires a showing of

prejudice caused by counsel's ineffective performance, because even professionally unreasonable conduct by counsel does not warrant setting aside a criminal judgment if counsel's conduct had no effect on the judgment. *Id.* at 691. To establish prejudice, the defendant must demonstrate a reasonable probability that the result of the trial would have been different but for counsel's deficiency. *Id.* at 698.

### 3. *Cronic* and cases in which a showing of prejudice is not required

{¶ 20} The *Strickland* test does not govern all claims that a defendant has been denied his Sixth Amendment right to counsel. In *Strickland*, the Supreme Court acknowledged that, "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Id.* at 692. *See also State v. Johnson*, 24 Ohio St.3d 87, 89 (1986) fn. 4 (citing *Cronic*, 466 U.S. 648, and noting the existence of exceptions to *Strickland*'s " 'cause-and-prejudice' test"). The *Strickland* court distinguished the claim before it from other types of Sixth Amendment claims, in which the existence of prejudice is legally presumed. *Strickland* at 692, citing *Cronic*. *Cronic*, which the Supreme Court decided the same day as *Strickland*, more fully addresses the categories of cases in which prejudice is presumed because the circumstances are so likely to result in prejudice "that the cost of litigating their effect in a particular case is unjustified." *Cronic* at 658.

{¶ 21} The Supreme Court in *Cronic* recognized three circumstances in which prejudice will be presumed. The "[m]ost obvious" circumstance is a complete denial of counsel at a critical stage of a criminal proceeding. *Id.* at 659. "The presumption that counsel's assistance is essential requires [the] conclu[sion] that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* The Supreme Court has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at fn. 25. For example, in *Geders v. United States*, 425 U.S. 80, 91 (1976), an order that prevented the defendant from consulting with his attorney during an overnight recess during trial infringed upon the defendant's right to the effective assistance of counsel, even without a showing of prejudice. Next, no specific showing of prejudice is required when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," thus rendering the adversary process presumptively unreliable. *Cronic* at 659. Finally, the court recognized that circumstances may exist in which, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a

fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60.

{¶ 22} After oral argument in this case, the court requested that the parties submit supplemental briefs addressing the application of *Cronic* and its progeny, including but not limited to *Hunt v. Mitchell*, 261 F.3d 575 (6th Cir.2001), and *State v. Walton*, 8th Dist. No. 90140, 2008-Ohio-3550, with respect to Ellison's claims of ineffective assistance of counsel.

### 4.  The parties' arguments

{¶ 23} Citing *Strickland* in his appellate brief, Ellison argues that Griffith performed deficiently, to Ellison's prejudice.  He argues that Griffith provided ineffective assistance during the plea bargaining process by failing to meet with him around the time of his proffer and his change-of-plea hearing and, again, around the time of his scheduled testimony in Knox's trial, when he began to waiver on whether to testify.  Ellison states that Griffith "was totally absent at the most critical stage of the case," when he was expected to testify against Knox.  (Appellant's Brief at 15.)  Ellison also argues that Griffith was ineffective when she acquiesced to prosecutors meeting with Ellison outside of her presence while his case remained pending for sentencing.  He claims that he was prejudiced by Griffith's ineffectiveness because he received a prison sentence of 33 years to life instead of the jointly recommended sentence under the original plea agreement of 18 years to life.

{¶ 24} Ellison maintains that the trial court's eleventh-hour appointment of Krapenc to advise him in Griffith's absence, rather than continuing the proceedings to allow Griffith's participation, did not satisfy Ellison's Sixth Amendment right to counsel.[2]  While defense counsel should not be "an organ of the state," *Faretta v. California*, 422 U.S. 806, 820 (1975), Ellison maintains that Krapenc, with whom he had no history or relationship, "clearly met with Ellison at the State's behest, to try to convince Ellison to testify and preserve [the state's] case against Knox." (Appellant's Brief at 23.)  Ellison correctly notes that Krapenc's knowledge of the case was limited to what he had learned that day from prosecutors and that Krapenc had no opportunity to review any discovery, including Ellison's proffer, prior to meeting with Ellison.  At sentencing, Ellison's attorney suggested it was unrealistic to expect that Ellison would trust Krapenc, whom he had just met, "to

---

[2] We reject Ellison's subordinate argument that the court essentially encouraged Krapenc to violate Prof. Cond.R. 4.2, which protects a person represented by counsel against overreaching by other attorneys who are participating in the same matter.

know what's going on," or to expect "everything to fall back in line" after Krapenc's short meeting with Ellison. (Dec. 6, 2022 Tr. at 42.)

{¶ 25} In his supplemental brief, Ellison argues that *Cronic* applies and that his Sixth Amendment right to the effective assistance of counsel was *per se* violated on three occasions: (1) when prosecutors interviewed him without the presence of defense counsel on October 29, 2021, (2) when prosecutors met with him without the presence of defense counsel on November 4, 2021, and (3) when Ellison, nominally represented by a newly appointed attorney unfamiliar with his case, was subjected to a hearing at which the trial court withdrew his original plea agreement. (Appellant's Supp. Brief at 6.) In the first two instances, he claims that he was completely denied the assistance of counsel, and in the third instance, he claims that no competent attorney could have provided effective assistance.

{¶ 26} In response to Ellison's ineffective assistance arguments, the state asserts that Ellison, with Griffith's assistance, entered into his August 2021 plea agreement, that he was fully informed of and fully understood the nature and terms of that agreement and that, after being fully advised by Krapenc, Ellison chose not to comply with those terms by refusing to testify against Knox. (Appellee's Brief at 12.) The state disputes Ellison's claim that he was left without counsel at a critical stage of his criminal case, noting that, without objection by Ellison, Krapenc "was able to speak with Ellison in confidence" prior to the trial court's vacation of his plea agreement. (Appellee's Brief at 15.) The state further disputes Ellison's argument that, due to his lack of familiarity with either the case or with Ellison, Krapenc was unable to provide competent counsel, stating that Krapenc was able to advise Ellison of the consequences of his decision to breach his plea agreement even without detailed knowledge of Ellison's case. Finally, the state argues that Ellison cannot establish that he was prejudiced by counsel's allegedly deficient performance, i.e., that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance.

{¶ 27} In its supplemental brief, the state maintains that *Cronic* and its progeny do not apply and do not support a presumption of prejudice in this case. (State's Supp. Brief at 1.) It argues that the circumstances here cannot be reasonably equated with the egregious circumstances in cases which have applied *Cronic*. In particular, it argues that neither Griffith's absence on November 4, 2021—purportedly caused by transportation problems—

nor Krapenc's last minute appointment of counsel to Ellison regarding his decision not to testify against Knox, was sufficiently egregious to invoke *Cronic*'s application.

### 5. No ineffective assistance leading up to Ellison's initial plea

{¶ 28} Ellison's claims that Griffith provided ineffective representation by not meeting with him around the time of his proffer and change-of-plea hearing fail because they rely on facts not in the appellate record.[3] When a claim of ineffective assistance of counsel depends on proof outside the trial court record, the claim is not appropriate for consideration on direct appeal. *State v. Hartman*, 93 Ohio St.3d 274, 299 (2001).

{¶ 29} Although the record contains no information about meetings or communications between Ellison and Griffith prior to the August 19, 2021, proffer and change-of-plea hearing, it is clear from the record that both Ellison and Griffith signed the proffer letter, the Defendant's Agreement, and the entry of guilty plea form and that Griffith represented Ellison at the change-of-plea hearing. The record also indicates that Griffith was present when Ellison made his recorded proffer. During his change-of-plea hearing, Ellison assured the judge that he had reviewed the indictment, the discovery, and the plea agreement with Griffith and that she had been able to answer all his questions, concerns, or comments. Ellison indicated that he was satisfied with Griffith's representation. We accordingly reject Ellison's argument that he was denied the effective assistance of counsel through August 19, 2021.

### 6. Ellison was completely deprived of counsel at critical stages leading up the vacation of his initial plea

{¶ 30} Ellison argues that *Cronic* applies to his claims and that he is entitled to a presumption of prejudice because he was completely denied the assistance of counsel, to which he was constitutionally entitled, at critical stages of the proceedings—when prosecutors met with Ellison outside Griffith's presence (and with Griffith's permission) on October 29, 2021, when prosecutors again spoke with Ellison, outside the presence of defense counsel, on November 4, 2021, after he expressed his refusal to testify against Knox. The United States Supreme Court has clearly established that complete denial of

---

[3] In his sentencing memoranda, Ellison stated that Griffith visited him only once in jail, several weeks prior to his August 19, 2021 proffer and plea. Although Ellison filed what purports to be a log of his visitors at the Franklin County jail, the filed document contains only the odd numbered pages of that document and therefore excludes any evidence of visits that might have occurred between April 22, 2021 and December 14, 2021. The visitors log provides no evidence of the existence or nonexistence of other communication, whether by telephone or otherwise, between Ellison and Griffith.

counsel during a critical stage of a criminal proceeding mandates a presumption of prejudice. *Hunt*, 261 F.3d at 581, citing *Cronic*, 266 U.S. 648, and *Powell*, 287 U.S. 45.

{¶ 31} We agree with Ellison that the meetings between prosecutors and Ellison, outside the presence of defense counsel, on October 29 and November 4, 2021, occurred during critical stages of Ellison's criminal proceedings, at which Ellison was constitutionally entitled to the assistance of counsel. The "essence of a 'critical stage' is not its formal resemblance to a trial, but the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some significant way in the absence of counsel." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir.2003) (holding that the "cooperation period" between the defendant's entry of a guilty plea, which included an agreement to cooperate with the government, and sentencing was a "critical stage").

{¶ 32} When prosecutors visited Ellison in jail on October 29, 2021 to prepare for his anticipated testimony against Knox and again on November 4, 2021 to convince him to fulfill his obligations under the Defendant's Agreement, the criminal proceedings against Ellison remained pending, as he had not been sentenced. Further, the Franklin County Prosecutor's Office retained sole discretion to determine whether Ellison had complied with his Defendant's Agreement. Under the Defendant's Agreement, which Ellison had signed after discussing it with Griffith, if the prosecutor's office determined that Ellison failed to fully cooperate or that he gave false, misleading, or incomplete information, the prosecutor's office retained the right to vacate Ellison's plea and reinstate his original charges. The state would then be permitted to introduce as evidence in its case-in-chief Ellison's recorded proffer, in which he confessed his involvement in Maddox-Suddith's murder. Although Ellison had agreed to cooperate in the state's prosecution of Knox to reduce his own criminal sanctions, the prosecutors remained Ellison's adversary. Nevertheless, while prosecutors held over his head a potential prison sentence of life without the possibility of parole should it determine that he violated his Defendant's Agreement and he then be convicted of aggravated murder, Ellison was left to face the prosecutors' questions alone.

{¶ 33} In *Leonti*, the Ninth Circuit addressed a claim of ineffective assistance of counsel during a defendant's attempts to cooperate with the government following the entry of a plea, in which he agreed to cooperate in exchange for a governmental motion requesting a downward departure from the federal sentencing guidelines. *Id*. at 1115-16. The Ninth Circuit held that the cooperation period was a "critical stage" at which a

defendant is entitled to counsel, because of the "profound effect" a motion for a downward departure could have on a defendant's sentence. *Id.* at 1117. The court stated:

> [A]n attorney's assistance is critical to the cooperation process in a number of respects, including, but not limited to, facilitating communication between the defendant and the government, attending proffer sessions, ascertaining the government's expectations and whether the defendant is satisfying them, communicating the client's limitations to the government, and establishing a record of attempts to cooperate.

*Id.* at 1119. The same may be said with respect to the cooperation process in state court.

{¶ 34} In *United States v. Ming He*, 2d Cir. No. 95-1331, 1996 U.S. App. LEXIS 28744 (Sept. 3, 1996), the Second Circuit addressed a similar claim, that the defendant was denied the constitutionally guaranteed assistance of counsel during a debriefing by the prosecution, after the defendant entered a guilty plea in conjunction with a cooperation agreement. With respect to such debriefings, the court stated, "While it is true that the government's questions are aimed at facilitating its own trial preparation rather than 'trapping' a cooperating witness, the potential obviously exists for the statements to be used later against the defendant," such that counsel has a role to play beyond merely ensuring that her client tells the truth. *Id.* at *18. The lawyer's assistance may include explaining the government's questions, calming the defendant, keeping the defendant focused on the fact that the government does not share the defendant's interests, assisting the defendant to clarify his answers, and helping to resolve disagreements between the government and the defendant. *Id.* at *19. Until the defendant's side of a cooperation agreement has been performed, the court reasoned, the government remains the cooperating witness's adversary. *Id.* The Second Circuit stated:

> The government was in a position to impose grave penalties on Ming He if his assistance turned out to be incomplete or dishonest. For example, it had the power to set aside the cooperation agreement and withdraw its acceptance of his plea, re-indict him on additional charges, and use his statements at the debriefing against him -- both directly and indirectly -- in a new criminal proceeding. * * * We think these constitutional ramifications of the debriefing session serious, and their seriousness strongly supports the appellant's insistence that he have the aid of counsel when the government interviews him.

*Id.* at *19-20. Although the Second District opted to decide *Ming He* on grounds other than the Sixth Amendment, its analysis—particularly, its discussion of the ongoing adversary nature of the proceedings and the prejudicial outcomes possible for a cooperating witness—applies equally to the Sixth Amendment context here. *See id.* at *3-4, 15.

{¶ 35} As the Ninth Circuit did in *Leonti*, we find the circumstances here—concerning interactions between the state and Ellison during the cooperation period—distinguishable from cases concerning a non-adversarial, presentence interview, generally conducted by a probation officer, which several courts (including the Ninth Circuit) have concluded is not a critical stage. *See Leonti*, 326 F.3d at 1119, citing *United States v. Benlian*, 63 F.3d 884, 827 (9th Cir.1995). Those cases, the *Leonti* court stated, have focused primarily on the non-adversarial nature of a presentence interview. *Id.* For example, the Ninth Circuit reasoned that a federal probation officer conducting a presentence interview has "no adversarial role" in the proceedings and serves only as a "neutral information gatherer" for the court, not as "an agent of the prosecution." *United States v. Gordon*, 4 F.3d 1567, 1571-72 (10th Cir.1993). In contrast, the prosecutors here retained exclusive authority to determine whether Ellison complied with the terms of his Defendant's Agreement, and if they determined that he had not complied, the prosecutors could vacate the plea, reinstate the original charges against Ellison, and introduce Ellison's damning proffer against him as part of the state's case-in-chief. The "government is not transformed into a neutral and impartial 'arm of the court' simply because it is seeking information from the defendant," as it simultaneously seeks the imposition of a sentence for the defendant's criminal conduct. *Leonti* at 1120. Encounters between the government and the defendant during the cooperation period remain "essentially adversarial." *Id.*

{¶ 36} For these reasons, we conclude that the October 29, 2021 and November 4, 2021 adversarial meetings between prosecutors and Ellison, outside the presence of defense counsel, constituted a critical stage of Ellison's criminal case and that the complete absence of defense counsel during those meetings constituted per se violations of Ellison's Sixth Amendment right to counsel, under *Cronic*.

### 7. Ellison was denied his constitutionally guaranteed right to the effective assistance of counsel at the hearing on November 4, 2021

{¶ 37} We now turn to Ellison's argument that he was denied the effective assistance of counsel by Griffith's absence at the hearing in which the trial court vacated his initial plea agreement. When Ellison communicated his decision not to testify against Knox, thus

exposing himself to the withdrawal of his plea agreement, the reinstatement of the original charges against him, and a sentence far greater than the 18 years to life sentence that had been jointly recommended under his plea agreement[4], Griffith was nowhere to be found. We have already determined that Ellison was denied his Sixth Amendment right to counsel when, with neither the presence nor the permission of defense counsel, prosecutors visited Ellison in jail to "inform[] him about the possible consequences of not testifying." (Nov. 4, 2021 Tr. at 5-6.) The prosecutors themselves recognized during that meeting that Ellison was entitled to the assistance of counsel, because he "was going from being a witness to possibly being a defendant involving some of his substantial rights." *Id.* at 6.

{¶ 38} Rather than wait for Griffith, whom prosecutors claim they had "attempted to contact * * * all morning," the trial court instead sent attorney Krapenc, who happened to be in the courtroom but who had no prior knowledge of the case, to speak with Ellison.[5] *Id.* at 5. A prosecutor stated during the hearing that afternoon that Griffith had begun "contacting people around noon," claiming she had been having car trouble. *Id.* at 7. But instead of waiting for Griffith, the trial court proceeded, with Krapenc representing Ellison at the hearing in which the court vacated Ellison's plea agreement and reinstated the original charges against him. This branch of Ellison's ineffective assistance claim is akin to the third type of cases described in *Cronic* as not requiring a showing of prejudice—cases in which even competent counsel could likely not render effective assistance.

{¶ 39} Krapenc explained his limited knowledge of Ellison's circumstances, which was based solely on "a summary of the facts" relayed to him by the prosecutors. (Nov. 4, 2021 Tr. at 7.) The prosecutors had informed Krapenc that Ellison had given a recorded proffer and had executed a Defendant's Agreement, in which he agreed that his plea and the jointly recommended sentence would be withdrawn if he failed to cooperate and that the state would then be entitled to use his proffered statement against him. However, Krapenc had neither seen nor heard Ellison's proffer. After speaking with Ellison in the jail, Krapenc reported to the prosecutors that Ellison would not testify and that he understood, as a consequence, his plea would be vacated, and his proffer used against him. After hearing from Krapenc, but before going on the record in Ellison's case or even

---

[4] If Ellison were convicted on all the charges originally brought against him, he faced a minimum sentence of 26 years to life.

[5] At Ellison's subsequent plea hearing, the prosecutor stated that Ellison seemed to understand the implications of his refusal to testify and that "[w]e even gave him a day, I think, to think about" his decision (Oct. 24, 2022 Tr. at 23), but that is clearly not the case.

formally moving the trial court to vacate Ellison's guilty plea, prosecutors executed a plea agreement with Knox. The trial judge, who was presiding over both Knox's case and Ellison's case, discharged the jury in Knox's case, accepted Knox's guilty plea, and proceeded immediately to sentence Knox, all before taking any action vis-à-vis Ellison's refusal to testify.

{¶ 40} Ellison argues that no competent attorney in Krapenc's position could have rendered effective assistance of counsel. (Ellison's Supp. Brief at 6.) More specifically, he argues that Krapenc had no knowledge of Ellison's case, had no history, and had built no trust with Ellison, had not seen or heard Ellison's proffer, and did not independently review Ellison's case. *Id.* at 9-10. Krapenc's knowledge of the case was based solely on a summary provided to him by the prosecutors, Ellison's adversaries, who had a vested interest in Ellison testifying against Knox.

{¶ 41} In *State v. Walton*, 8th Dist. No. 90140, 2008-Ohio-3550, the Eighth District Court of Appeals found the trial court's appointment of replacement counsel for the defendant one hour before hearings on the defendant's repeat violent offender specification, sexual predator classification, and sentencing was " 'sufficiently egregious as to warrant a presumption of ineffectiveness.' " *Id.* at ¶ 43, quoting *Hunt*, 261 F.3d at 585. The trial court had previously rescheduled the defendant's repeat violent offender, sexual predator, and sentencing hearings due to defense counsel being ill, but when defense counsel remained ill on the rescheduled date, it refused to grant another continuance. Instead, the trial court appointed new counsel, who had not been present during the defendant's trial and who had never previously spoken with the defendant regarding his case, to represent the defendant. At the hearings, which commenced an hour later, the trial court found the defendant guilty of the repeat violent offender specification, classified the defendant as a sexual predator, and imposed an aggregate prison sentence of 23 years.

{¶ 42} On appeal in *Walton*, the defendant argued that he had been denied his Sixth Amendment right to counsel, and the Eighth District agreed. It noted, "The duty to provide counsel 'is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case.' " *Id.* at ¶ 40, quoting *Powell*, 287 U.S. at 71. The court also quoted the Sixth Circuit's decision in *Hunt*: " 'The likelihood that any lawyer, even a fully competent one [appointed to represent a defendant on the day of trial], could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the

trial.' " *Walton* at ¶ 42, quoting *Hunt* at 585. The Eighth District concluded that the trial court's appointment of replacement counsel one hour prior to defendant's hearing constituted "a per se violation" of the defendant's constitutional right to the assistance of counsel. *Id.* at ¶ 44.

{¶ 43} In *Hunt*, the trial court arraigned Hunt, appointed counsel, and began voir dire all on the same day—89 days after Hunt's arrest, during which time he had remained in jail. Facing the statutory speedy trial deadline, the court told Hunt " 'we'll start trial [today] or you can waive time if you want more time to consult with your lawyer to prepare your case.' " *Id.* at 578. The trial court denied defense counsel's request for "another ten minutes" to speak with his client. *Id.* After Hunt refused to waive time, voir dire commenced that afternoon, and trial began the following day, despite defense counsel's stated misgivings about proceeding without sufficient time to consult with Hunt or to prepare a defense. *Id.* at 579. Hunt was convicted, and the Eighth District Court of Appeals affirmed his convictions.

{¶ 44} After the Supreme Court of Ohio refused a discretionary appeal, Hunt filed a petition for a writ of habeas corpus in federal court, which the district court denied. The Sixth Circuit granted a certificate of appealability to consider whether Hunt was denied his Sixth Amendment right to the effective assistance of counsel due to the trial court's appointment of counsel on the day of trial. *Id.* at 579. The Sixth Circuit concluded that, in affirming Hunt's convictions, the Eighth District misapplied *Cronic* and erred by concluding that Hunt was not entitled to a presumption of ineffectiveness, including prejudice. *Id.* at 582. It stated, "As a consequence of the trial court's haste to begin trial, counsel was required to procced to voir dire without ever discussing the case with his client and without conducting any discovery or independent investigation of the facts." *Id.* at 583. In conclusion, the court stated, " '[W]here counsel has no acquaintance with the facts of the case and no opportunity to plan a defense, the result is that the defendant is effectively denied his constitutional right to assistance of counsel.' " *Id.* at 585, quoting *Chambers v. Maroney*, 399 U.S. 42, 59 (1975) (Harlan, J., concurring in part and dissenting in part).

{¶ 45} In *United States v. Morris*, 470 F.3d 596 (6th Cir.2006), the Sixth Circuit found that the defendant was denied the effective assistance of counsel under *Cronic*, when it had "no trouble agreeing that * * * 'counsel was placed in circumstances in which competent counsel very likely could not render assistance.' " *Id.* at 602, quoting *Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir.2003). In *Morris*, newly appointed defense counsel was

provided only a short time to prepare for a preliminary examination hearing in which the defendant was asked to accept or deny a plea offer by the state. The court noted that counsel was able to meet with defendant only in the court's "bull pen," which prohibited counsel from having a confidential, privileged conversation with the defendant before the hearing. *Id.* at 601. The court went on:

> The fact that Morris's counsel gave him *some* advice does not preclude a finding of constructive denial of counsel under [the *Cronic*] standard. Rather, the circumstances, such as the lack of time for adequate preparation and the lack of privacy for attorney-client consultation, would have precluded any lawyer from providing effective advice.

(Emphasis sic.) *Id.* at 602.

{¶ 46} As in *Morris*, the fact that Krapenc, an attorney, met with Ellison about his refusal to testify does not preclude a finding that Ellison was constructively denied the right to counsel. At the same time, however, we in no way criticize Krapenc's efforts; the trial court placed him in an impossible situation. Ellison knew Griffith was his attorney; she had negotiated his favorable plea agreement and Defendant's Agreement with the state, answered all his questions, concerns, and comments about the plea agreement, was present as his counsel when he gave his proffered statement to the prosecution, and represented him at the August 19, 2021 change-of-plea hearing. Yet when Ellison was scheduled to testify against Knox pursuant to the Defendant's Agreement and when, upon refusing to do so, he was hauled before the trial court for revocation of his plea agreement, Griffith was neither present nor available to consult with Ellison about his decision and its consequences.

{¶ 47} After deciding that he would not testify against Knox, Ellison was first visited by the prosecutors who were not only counting on his testimony[6] in the in-progress trial of Knox, but also held over Ellison's head the threat of revoking his plea agreement and reinstating the original charges against him. While they ostensibly informed Ellison about the possible consequences of his decision not to testify, they understood that Ellison—whose substantial rights were at stake—was entitled to the assistance of counsel. *See Burdine v. Johnson*, 231 F.3d 950, 964 (5th Cir.2000) (in determining whether a particular

---

[6] Assistant Prosecutor Zeyen stated it was Ellison's expected testimony that convinced the state to proceed to trial in Knox's case. (Nov. 4, 2021 Tr. at 4-5.) The prosecutors were aware that Ellison's testimony was essential for the state to obtain a conviction against Knox. Zeyen explained that Ellison's refusal to testify was "a blow" to the case against Knox, *id.* at 7, "requiring a negotiated settlement in that case." *Id.* at 8.

stage of the proceedings is critical, the court looks to whether " 'the substantial rights of a defendant may be affected during that type of proceeding' "), quoting *United States v. Taylor*, 933 F.2d 307 (5th Cir.1991). Next, Krapenc appeared to speak with Ellison, who had no history with Krapenc and no basis for believing that Krapenc was advocating for or acting in Ellison's best interest, as opposed to as an agent of the court or the state. *See Jones v. Barnes*, 463 U.S. 745, 758 (1983) (Brennan, J., dissenting) ("To satisfy the Constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court."). Notably, it does not appear from the record that the trial judge called Ellison into court to explain its appointment of Krapenc as replacement counsel before sending him to speak with Ellison.

{¶ 48} Krapenc had no prior knowledge of Ellison's case, had not been provided any discovery, and could not speak to the details of Ellison's Defendant's Agreement or proffer, which he had not seen or heard. Krapenc's knowledge was based solely on what he had learned from the prosecutors, the representatives of Ellison's adversary. Krapenc stated he advised Ellison that if he did not testify his plea would be withdrawn, the state would introduce his proffer against him at trial, and that if convicted of all charges he would be sentenced to a minimum sentence of 26 years to life and up to a maximum sentence of life without the possibility of parole. Beyond his unfamiliarity with the details of Ellison's case and the lack of established trust with Ellison, Krapenc was not privy to information Ellison had shared with Griffith regarding the charges against him or regarding his agreement to testify against Knox. He was, therefore, in no position to respond to or ease any anxiety or fear that Ellison may have had about testifying. These circumstances are such that, although Krapenc spoke with Ellison in the hours leading up to the vacation of his guilty plea and stood beside Ellison in the hearing at which that occurred, the likelihood that any replacement lawyer, even a fully competent one, could have provided Ellison with effective assistance is so small that a presumption of prejudice is appropriate under *Cronic*.

{¶ 49} For these reasons, we conclude that Ellison was denied his Sixth Amendment right to the assistance of counsel on both October 31, 2021 and November 4, 2021, and we sustain Ellison's first assignment of error. Having concluded that the trial court's appointment of Krapenc to represent Ellison in Griffith's absence did not assuage the denial of Ellison's constitutional right to the assistance of counsel, Ellison's second assignment of error, that the trial court erred in "forcing" him to accept Krapenc as "new counsel," is moot.

### 8. Remedy

**{¶ 50}** We must now consider the appropriate remedy for the violation of Ellison's constitutional right to counsel. The Supreme Court has repeatedly held that a trial court must proceed on remand from the point at which the error necessitating the remand occurred. *State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382, ¶ 11, citing *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113 (1982); *State v. Chinn*, 85 Ohio St.3d 548, 563 (1999); *State v. Filiaggi*, 86 Ohio St.3d 230, 240 (1999). The error necessitating a remand—the denial of Ellison's constitutional right to the effective assistance of counsel—occurred before the trial court revoked Ellison's original plea agreement and reinstated the charges that had been nolled pursuant to that agreement.

**{¶ 51}** "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.' " *Lafler*, 566 U.S. at 170, quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981). The remedy must " 'neutralize the taint of the violation.' " *Id.*, quoting *Morrison* at 364. The remedy should not, however, grant a windfall to the defendant. *Id.* at 170, citing *United States v. Mechanik*, 475 U.S. 66, 72 (1986).

**{¶ 52}** As a result of the ineffective assistance of counsel, the respondent in *Lafler* rejected a plea offer, by which the state agreed to dismiss certain charges and to recommend a sentence of 51 to 85 months for the remaining charges. *Id.* at 161. After trial, the respondent was convicted on all counts and received a mandatory minimum prison sentence of 185 to 360 months. *Id.* The Supreme Court recognized that, in some circumstances, the injury suffered by a defendant who declines a plea offer as a result of ineffective assistance of counsel and who then receives a greater sentence at trial may be remedied by resentencing alone. "This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial." *Id.* at 171. But if the rejected offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was ultimately convicted, or if a mandatory sentence restricts the court's discretion with respect to the charges of conviction, resentencing alone may not suffice. *Id.*

**{¶ 53}** This case presents the latter scenario. While being denied the assistance of counsel to which he was constitutionally entitled, Ellison lost the benefit of his plea agreement to a lesser charge than that to which he was subsequently convicted. The trial court revoked Ellison's original guilty plea to murder with a firearm specification, for which

the parties jointly recommended the mandatory aggregate sentence of 18 years to life. Once the court revoked Ellison's original plea and reinstated the nolled charges, the state did not negotiate with the defense and would accept a plea only to the most serious charge, aggravated murder, with a firearm specification, for which a conviction required a minimum mandatory sentence of life in prison with parole eligibility after serving 23 years. *See* R.C. 2929.03(A)(1) and 2929.14(B)(1)(a)(ii). Ultimately, the trial court sentenced Ellison to life imprisonment with parole eligibility after 33 years.

{¶ 54} The only way to neutralize the taint of the violation of Ellison's Sixth Amendment right to counsel is to require the trial court to proceed on remand from the time of the violations, prior to the revocation of Ellison's original plea agreement. We acknowledge the state's argument that such a result gives Ellison the full benefit of his plea agreement despite his refusal to fulfill his obligations thereunder, and thus represents a windfall to Ellison. But we also recognize that the timing of the prosecution's and trial court's actions on November 4, 2021 rendered it impossible for Ellison to fulfill his obligations under the plea agreement. Before formally moving the trial court to withdraw Ellison's original guilty plea and to reinstate the nolled charges against Ellison, the prosecution resolved the charges against Knox via a plea agreement and proceeded immediately to sentencing. Thus, by the time the state moved to vacate Ellison's plea agreement based on his refusal to testify against Knox and before the court confirmed with Ellison that he would not testify, there were no pending proceedings against Knox for Ellison to testify in. Under these circumstances, we conclude that vindication of the violation of Ellison's Sixth Amendment right to counsel requires the reinstatement of Ellison's original plea agreement and sentencing thereunder.

### B.  Assignment of Error No. Three

{¶ 55} In his third and final assignment of error, Ellison argues that the trial court erred by reinstating the charges it had nolled as part of his initial plea agreement after he refused to testify against Knox. Because we have concluded that Ellison is entitled to reinstatement of his original plea agreement, we deny Ellison's third assignment of error as moot.

## III.  CONCLUSION

{¶ 56} For these reasons, we sustain Ellison's first assignment of error and overrule as moot Ellison's second and third assignments of error. Because Ellison was denied his constitutional right to the effective assistance of counsel under the Sixth Amendment to the

United States Constitution, we vacate his judgment of conviction and remand this matter to the trial court for further proceedings consistent with this decision and the law.

*Judgment reversed*;
*cause remanded.*

MENTEL, P.J., and EDELSTEIN, J., concur.

———————————